No. 25-2132

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SEGA OF AMERICA, INC.,
*Plaintiff-Appellee,*

v.

CONSOVOY MCCARTHY PLLC,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia, No. 1:25-cv-00257 (Hilton, J.)

## BRIEF OF APPELLANT CONSOVOY MCCARTHY PLLC

Thomas R. McCarthy
Bryan Weir
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
tom@consovoymccarthy.com
bryan@consovoymccarthy.com

November 17, 2025

*Counsel for Appellant Consovoy McCarthy PLLC*

No. 25-2132, *Sega of America, Inc. v. Consovoy McCarthy PLLC*

## CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Appellant Consovoy McCarthy, PLLC certifies that it has no parent corporation, and no corporation owns 10% or more of its stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ Bryan Weir*
Counsel for Consovoy McCarthy PLLC
Dated: November 17, 2025

## TABLE OF CONTENTS

Corporate Disclosure Statement ..................................................................... i

Introduction ........................................................................................................ 1

Jurisdictional Statement ..................................................................................... 3

Statement of the Issue ........................................................................................ 4

Statement of the Case ......................................................................................... 4

    A.  Factual Background ................................................................................ 4

        1.  Consovoy's clients file arbitration demands against Sega and prevail on their petition to compel arbitration. ................................. 4

        2.  Sega sues Consovoy's clients and Consovoy itself for filing the arbitration demands and the successful petition to compel arbitration. .......................................................................................... 7

    B.  Procedural Background.......................................................................... 8

Standard of Review ........................................................................................... 10

Summary of Argument ...................................................................................... 11

Argument............................................................................................................ 11

    I.   The district court erred by refusing to stay this case under Section 3 of the FAA. .......................................................................................... 11

Conclusion......................................................................................................... 19

Statement regarding Oral Argument ................................................................. 20

Certificate of Compliance ................................................................................. 20

Certificate of Service......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) ..................................................6

*Am. Bankers Ins. Grp., Inc. v. Long*,
  453 F.3d 623 (4th Cir. 2006) ........................................................13, 19

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ....................................................................4, 12

*DoorDash, Inc. v. Plascencia*,
  2023 WL 2801677 (Cal. Super. Ct. Apr. 3, 2023) ..............................1

*Hensley, et al. v. Sega of America, Inc.*,
  2024 WL 5466122 (L.A. Super. Ct. Nov. 21, 2024)...........................6

*Hill v. GE Power Sys., Inc.*,
  282 F.3d 343 (5th Cir. 2002) .......................................................14, 16

*Hohenshelt v. Superior Ct. of Los Angeles Cnty.*,
  18 Cal. 5th 310 (2025)......................................................................6

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
  863 F.2d 315 (4th Cir. 1988) ..............................................................12

*Liapes v. Facebook, Inc.*,
  95 Cal. App. 5th 910 (2023)...............................................................5

*Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*,
  380 F.3d 200 (4th Cir. 2004)..............................................................10

*Rogers v. Tug Hill Operating, LLC*,
  76 F.4th 279 (4th Cir. 2023)..............................................................13

*Sam Reisfeld & Son Import Company v. S.A. Eteco*,
  530 F.2d 679 (5th Cir. 1976)..............................................................12

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
  372 F.3d 339 (5th Cir. 2004).......................................................*passim*

**Statutes**

28 U.S.C. §1331 ...................................................................3

28 U.S.C. §1332 ...................................................................3

28 U.S.C. §1367 ...................................................................3

9 U.S.C. §16 .......................................................................4

9 U.S.C. §3 ...............................................................*passim*

Cal. Civ. Proc. Code §1281.97 ................................................6

**Other Authorities**

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022)...........................6

**INTRODUCTION**

Section 3 of the Federal Arbitration Act requires reversal of the district court's denial of Consovoy McCarthy PLLC's motion to stay this case pending its clients' arbitrations against Sega. The FAA gives Consovoy a statutory right to that stay because Sega's claims against Consovoy are derivative of its claims against Consovoy's clients in arbitration. *See* 9 U.S.C. §3. The district court's denial of a stay pending the resolution of those arbitrations misconstrued the FAA's purpose and uncontested caselaw.

***

Consovoy McCarthy PLLC is a law firm that regularly represents consumers in arbitration against big companies. *See, e.g.*, *DoorDash, Inc. v. Plascencia*, 2023 WL 2801677, at *1 (Cal. Super. Ct. Apr. 3, 2023) (confirming arbitration award of $4,876,000 for 78 of Consovoy's clients). Since early 2024, Consovoy has represented California consumers with claims against Sega of America, Inc under California's Unruh Civil Rights Act.

In April of 2024, Consovoy filed its clients' arbitration demands against Sega pursuant to the terms of Sega's own arbitration agreement. And after Sega refused to arbitrate, Consovoy filed a petition to compel arbitration in Los Angeles Superior Court on its clients' behalf. That court granted the petition and compelled Sega to

arbitrate with Consovoy's clients. The California appellate courts declined to review—much less disturb—the trial court's ruling.

Having been compelled to arbitrate and without any further appeal, Sega embarked upon a scorched-earth legal strategy. Two components of that strategy are relevant to this appeal. *First,* Sega sued Consovoy's clients in a new action in California state court alleging breach and fraud claims. Those counterclaims turn on whether Consovoy's clients entered a contract with Sega and whether the clients breached that contract. The California court has compelled Sega to arbitrate those counterclaims against Consovoy's clients. *Second,* Sega took the extraordinary step of suing Consovoy itself in the Eastern District of Virginia. Sega's claims against Consovoy turn on the same questions as Sega's counterclaims against Consovoy's clients in arbitration: whether the clients entered into a contract with Sega and whether the clients breached that agreement.

Given that Sega's claims against Consovoy are derivative of Sega's counterclaims against Consovoy's clients, Consovoy filed a motion to stay this action pending resolution of its clients' underlying arbitrations with Sega under 9 U.S.C. §3. *See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). The district court denied that motion without a hearing. The court did so because it misunderstood the basis of Consovoy's motion. Again, Consovoy's motion rested on the fact that Sega's counterclaims against

Consovoy's clients are based on the same issues as Sega's claims against Consovoy in this case. But in its decision, the district court pointed to the affirmative claims that Consovoy's clients brought against Sega in arbitration—not Sega's counterclaims against Consovoy's clients. JA329-30. Resting on that misunderstanding, the district court held that "[t]he Claimants' claims in arbitration and Sega's claims against [Consovoy] are entirely distinct." JA330. That mistake is largely what led the court to deny the motion to stay.

For those reasons and the ones outlined below, this Court should reverse the district court's denial of Consovoy's motion to stay and remand with instructions to stay of this case pending the resolution of the underlying arbitrations.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because Plaintiff-Appellee Sega of America, Inc. alleges complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. §1332. The district court also had jurisdiction because Sega alleges one claim arising under federal law, 28 U.S.C. §1331, and it evoked principles of supplemental jurisdiction over its state law claims, 28 U.S.C. §1367. The district court denied Consovoy's motion to stay on September 22, 2025, and Consovoy appealed the same day. JA327-331; JA332-33.

This Court has jurisdiction because the FAA provides the right to an immediate appeal where, as here, the district court "refus[es] a stay of any action

under section 3" of that Act. 9 U.S.C. §16(a)(1)(A). Under Section 16's "clear and unambiguous terms, any litigant who asks for a stay under § 3 is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009).

## STATEMENT OF THE ISSUE

Whether the district court erred by denying Consovoy's motion to stay this case pending Consovoy's clients' arbitrations under Section 3 of the Federal Arbitration Act.

## STATEMENT OF THE CASE

### A.    Factual Background

### 1.    Consovoy's clients file arbitration demands against Sega and prevail on their petition to compel arbitration.

Sega of America, Inc is a California-based company whose primary business is developing video games. JA012, ¶5; JA019, ¶28. Consistent with many big businesses' practices, Sega imposes a broad arbitration requirement on its customers to shunt their claims into individual arbitrations. Pursuant to its End User License Agreement (or EULA), Sega requires anyone playing its games to waive their right to sue in court (and to class procedures) and instead forces them to file any claims against Sega in individual arbitration. JA020, ¶¶31-32. Sega chose JAMS as its arbitral provider. JA020-21, ¶33.

Consovoy McCarthy PLLC is a law firm that regularly represents consumers in litigation and arbitration against large companies. Since early last year, Consovoy has represented over 19,000 Californians who played Sega's mobile games. JA026, ¶54. Consovoy's clients each have claims against Sega under California law arising out of their use of those games. JA027, ¶56. Pursuant to Sega's EULA and JAMS's rules, Consovoy filed individual demands against Sega in April 2024 on behalf of its clients. JA026, ¶54.

Those demands allege that Sega violated California's Unruh Civil Rights Act as outlined in *Liapes v. Facebook, Inc.*, 95 Cal. App. 5th 910 (2023), *review denied* (Jan. 10, 2024). *See* JA052. Specifically, *Liapes* held that a company violates California law when it targets consumers with advertising based upon their protected characteristics, such as their gender and age. *See Liapes*, 95 Cal. App. 5th at 920-27 (explaining that Plaintiff alleged that "Facebook expressly relies on gender and age to determine the audience for its ads" and, as a result, "the complaint raises a plausible inference Facebook treated Liapes unequally because of her gender and age—a valid Unruh Civil Rights Act claim for intentional discrimination."). Each of Consovoy's clients have alleged that Sega engaged in precisely that prohibited form of advertising. JA052.

JAMS evaluated the demands and determined that Consovoy's clients met the necessary filing requirements. JA029, ¶62. At that stage, California law required

JAMS to invoice Sega for the filing fees needed to get the arbitrations started. *See* Cal. Civ. Proc. Code §1281.97(a)(2). JAMS's fee schedule states that "[t]he filing fee for two-party matters is $2,000." JA014, ¶15. JAMS thus issued Sega an invoice to pay $39,082,000 in filing fees to start the arbitrations that Consovoy's clients filed. JA029, ¶62.[1]

Unhappy with the consequences of the agreement it had drafted, Sega refused to pay the JAMS invoice and arbitrate with Consovoy's clients. JA030, ¶67. That refusal forced Consovoy to file a petition to compel arbitration in L.A. Superior Court on its clients' behalf. JA030, ¶69; *see Hensley, et al. v. Sega of America, Inc.*, 2024 WL 5466122 (L.A. Super. Ct. Nov. 21, 2024). The court granted the petition in its entirety and compelled Sega to arbitrate with Consovoy's clients. *See Hensley*, 2024 WL 5466122, at *7.

---

[1] Actions like these—where lawyers represent thousands of individuals in arbitration—are now a common vehicle for vindicating consumers' and employees' claims against companies. *See generally* J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022). Courts have recognized their viability. *See, e.g.*, *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067-78 (N.D. Cal. 2020). And the California Legislature specifically blessed actions like these when it passed laws to ensure that companies like Sega pay the arbitration fees to ensure the arbitrations proceed. *See Hohenshelt v. Superior Ct. of Los Angeles Cnty.,* 18 Cal. 5th 310, 329-30 (2025).

### 2. Sega sues Consovoy's clients and Consovoy itself for filing the arbitration demands and the successful petition to compel arbitration.

Sega responded to its loss by launching a scorched-Earth litigation campaign. Two components of that campaign are relevant to this appeal. *First,* rather than heed the L.A. Superior Court's decision, Sega filed a new lawsuit in that court against Consovoy's clients asserting fraud and breach of contract claims. *See* JA208-24. For its fraud claim, Sega alleges that Consovoy's clients "made material misrepresentations in arbitration demands by claiming they were bona fide players of Sega mobile games when in fact they were not." JA220, ¶40. For its breach claim, Sega relies on its EULA, which provides that "[y]ou cannot bring a claim against Sega as a plaintiff or class member in a class action or any other collective, consolidated, or representative action." JA215-16, ¶24 (capitalization removed). Sega claims Consovoy's clients breached that provision by filing their successful *Hensley* petition to compel arbitration because, according to Sega, that petition was a "consolidated" action. JA219, ¶¶34-35; JA221, ¶50. On August 14, the L.A. Superior Court compelled Sega to arbitrate those claims as well. JA283-90.

*Second*, Sega sued Consovoy itself in this case for representing its clients in their disputes against Sega. Sega's first two claims under state law allege that Consovoy should be held liable merely for filing the successful *Hensley* petition on behalf of its clients, as well as their underlying arbitration demands. JA032-35, ¶¶74-

93. Sega's second two claims allege that Consovoy engaged in false advertising by soliciting clients with claims against Sega and should be held liable under state law and the Lanham Act. JA035-037, ¶¶94-107.

More to the point, Sega's claims against Consovoy are derivative of the claims that Sega has asserted against Consovoy's clients in arbitration. Like Sega's two claims against Consovoy's clients, Sega's four claims against Consovoy all turn on (1) whether Consovoy's clients agreed to Sega's EULA and (2) whether they breached the EULA. On Count I, for example, Sega's theory is that "Consovoy intentionally induced Claimants that agreed to the EULA to breach it by making the decision to file … a single, consolidated petition." JA032, ¶77. That underlying breach-of-contract theory is the same as the one Sega is asserting against Consovoy's clients in arbitration. *Supra* 7. Sega's other three claims likewise turn on whether Consovoy's clients agreed to Sega's EULA and, if they did, whether they breached it. *See, e.g.*, JA23, ¶82; JA036-37, ¶¶98, 101, 104, 106.

## B. Procedural Background.

In the district court, Consovoy moved to dismiss Sega's claims under Rule 12(b)(6). *See* JA183. Judge Hilton denied that motion in a two-line order on July 31 without any analysis. JA183. That denial is subject to a separate appeal under Case No. 25-1878.

Two weeks later, the L.A. Superior Court compelled Sega to arbitrate its fraud and breach counterclaims against Consovoy's clients. JA283-90. That same day, Consovoy filed a motion to stay the district court action on two grounds. *First*, Consovoy explained that Section 3 of the Federal Arbitration Act requires a district court to stay the court action when it includes "any issue referable to arbitration." 9 U.S.C. §3; *see* JA201-04; JA274-76. Because Sega's claims against Consovoy are all derivative of its claims against Consovoy's clients in arbitration, Sega's claims against Consovoy in this case must be stayed pending completion of the arbitrations under Section 3.

Judge Hilton denied Consovoy's motion to stay on September 22. JA327-31. The order made several mistaken observations. First, the order observes that "stays under Section 3 are typically reserved for disputes between parties to an arbitration agreement." JA330. Next, Judge Hilton focused on Consovoy's clients' *affirmative arbitration claims against Sega*, and compared those claims with Sega's claims against Consovoy. But that was not the basis for Consovoy's motion. Consovoy moved to stay the arbitrations because Sega's claims against Consovoy are derivative of *Sega's counterclaims against Consovoy*'s *clients* in arbitration. Judge Hilton's mistake led him never to consider Sega's claims against Consovoy's clients as a basis for a stay. JA329-30.

To that end, Judge Hilton observed that Consovoy's clients "allege that Sega has engaged in discriminatory advertisement targeting" in violation of California's Unruh Civil Rights Act, whereas "Sega alleges that [Consovoy] engaged in false advertising regarding Sega's video games and the consumer's entitlement to compensation and tortiously interfered with Sega's contracts with the Claimants and Sega." JA330. Based on that comparison, Judge Hilton concluded that Consovoy's clients' affirmative "claims in arbitration and Sega's claims against [Consovoy] are entirely distinct" because "[t]he resolution of [the clients'] Unruh Civil Rights Act claims has no bearing on this litigation." JA330. That order finds a stay under Section 3 of the FAA unjustified because "Sega's claims in this action will have no bearing on the [the clients' affirmative] claims in arbitration." JA330.

Consovoy filed a second notice of appeal of the order denying a stay under Section 3 of the FAA. JA332-33. Consovoy also moved this Court to stay district court proceedings pending this appeal, which the motions panel denied in a 2-1 decision. Dkt. 27.

## STANDARD OF REVIEW

This Court reviews de novo the denial of a stay pending arbitration under 9 U.S.C. §3. *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004).

## SUMMARY OF ARGUMENT

Section 3 of the Federal Arbitration Act requires that this case be stayed pending the arbitrations between Sega and Consovoy's clients. Those arbitrations will require the arbitrators to decide (among other things) whether (1) Consovoy's clients agreed to Sega's arbitration agreement (the EULA) and (2) whether they breached that agreement. Those exact issues underlie Sega's claims against Consovoy here. In this posture, Section 3 "*shall* on application of one of the parties *stay* the trial of the action until such arbitration has been had," 9 U.S.C. §3 (emphasis added), so that the issues can be tried in arbitration before court. The underlying arbitrations that must adjudicate whether Consovoy's clients agreed to the EULA and whether they breached it have not yet occurred. So Consovoy is entitled to a stay of these proceedings—involving overlapping issues because Sega's claims against Consovoy all raise the same two issues—under the FAA.

## ARGUMENT

### I.     The district court erred by refusing to stay this case under Section 3 of the FAA.

Section 3 of the FAA requires a mandatory stay of proceedings pending the resolution of Consovoy's clients' arbitrations with Sega. The statute provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration … , the court in which such suit is pending … *shall* on application of one of the parties *stay* the trial of the action until such arbitration has been had." 9 U.S.C. §3 (emphasis added).

Although a stay under Section 3 typically arises in a dispute between parties to an arbitration agreement, non-signatories to arbitration agreements regularly enforce those agreements. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (expressly rejecting the argument that Section 3 "mandated stays only for disputes between parties to a written arbitration agreement"). In *Arthur Andersen*, the Supreme Court held that Section 3 "says that stays are required if the claims are 'referable to arbitration under an agreement in writing,'" thus permitting the enforcement of an arbitration agreement "against (or for the benefit of) a third party under state contract law." *Id.*

The Fourth Circuit, too, has also long permitted non-signatories to enforce arbitration agreements. *See, e.g., J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988) (referring claims against a nonsignatory to arbitration "even though the parent is not formally a party to the arbitration agreement" because claims against the nonsignatory "parent company and its subsidiary are based on the same facts and are inherently inseparable" (citing *Sam Reisfeld & Son Import Company v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) ("If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."))); *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) ("It is well-established, however, that a nonsignatory to an arbitration

clause may … compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate."). Recently, the Fourth Circuit has emphasized that "*Arthur Andersen* thus stands for the principle that if state contract law allows a person who was not a party to an arbitration agreement to nonetheless enforce it, then that nonparty is entitled to invoke the FAA's enforcement mechanisms in federal court." *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 287 (4th Cir. 2023) (citing 556 U.S. at 631-32).

In a similar vein , "non-signatories" also "have the right to ask the court for a *mandatory* stay of litigation, in favor of pending arbitration to which they are not a party." *Waste Mgmt.*, 372 F.3d at 342. "That is, in any suit brought in federal court 'upon any issue referable to arbitration' under a written arbitration agreement, 'the court … *shall* on application of one of the parties' stay the suit." *Id.* (quoting 9 U.S.C. §3). A non-signatory is entitled to a mandatory stay where "1) the arbitrated and litigated disputes … involve the same operative facts; 2) the claims asserted in the arbitration and litigation [are] 'inherently inseparable'; and 3) the litigation [would] have a 'critical impact' on the arbitration." *Id.* at 343. These "factors" are not "a bright line rule" or "required" for a party to be entitled to a stay under Section 3. *Id.* at 343 n.6. Ultimately, a district court "must grant the stay if the claim at issue is indeed covered by the arbitration agreement." *Id.* at 342. In other words, "[a] suit

against a nonsignatory that is based upon the same operative facts and is inherently inseparable from the claims against a signatory will *always* contain 'issue[s] referable to arbitration under an agreement in writing,' and thus will satisfy the requirements of Section 16(a)(1)." *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002) (quoting 9 U.S.C. §3).

The district court's decision denying started with a fundamental misunderstanding of the law. The court began its order by stating that "stays under Section 3 are typically reserved for disputes between parties to an arbitration agreement." JA330. But that isn't right as already outlined. Indeed, Sega never disputed that Section 3 of the FAA provides "non-signatories" with "the right to ask the court for a *mandatory* stay of litigation, in favor of pending arbitration to which they are not a party." *Waste Mgmt.*, 372 F.3d at 342 (emphasis in original). Nor did Sega argue that the *Waste Management* and *Hill* line of cases was wrongly decided. JA253-56. The district court's reliance on an assumption that Consovoy cannot obtain a stay because it is not a party to Sega's EULA was thus erroneous.

On the merits, Consovoy is "entitled to a stay pending arbitration" of its clients' claims. *Hill*, 282 F.3d at 348 (permitting the suit to go forward "would undermine the arbitration proceedings"—based on "inherently inseparable" issues— "thwarting the federal policy in favor of arbitration"). Sega cannot seriously argue that its claims against Consovoy did not "aris[e] out of" Sega's EULA. JA042-43,

§19. Each claim references the EULA repeatedly, *see* JA032, ¶¶75-77, 79-80 (Count I); JA033-34, ¶¶82, 91 (Count II); JA035-36, ¶¶96, 98, 100, 101 (Count III); JA036-37, ¶¶104, 106 (Count IV). And these are not stray references—as Sega articulates its claims against Consovoy, they would not exist but for its EULA. The existence of a valid agreement under the EULA and whether Consovoy's clients breached it are front and center in the arbitrations involving Consovoy's clients. They are the essence of Sega's claims against Consovoy's clients, which (again) have been compelled to arbitration. The FAA requires that those arbitrations be decided before a court passes on the very same issues that underlie Sega's claims against Consovoy.

Here again, the district court made a mistake. Instead of focusing on Sega's counterclaims against Consovoy's clients in arbitration—the claims on which Sega's claims against Consovoy are based here—the district court looked only at the claims that Consovoy's clients brought against Sega under California's Unruh Civil Rights Act. Again, Sega's counterclaims against Consovoy's clients allege that they allegedly (1) engaged in fraud by filing arbitration demands because they never agreed to the EULA and (2) that those clients breached the EULA by filing a single petition to compel arbitration. *See* JA209, ¶2 ("the Defendants made fraudulent arbitration demands on Sega as many are not bona fide users of Sega games, and thus have no right to prosecute, let alone arbitrate, a valid cause of action against Sega"); JA210, ¶3 ("As an alternative to this fraud claim, and to the extent any

Defendants are bona fide users of Sega games, Defendants also breached their contract by filing a single collective petition to compel arbitration in this Court."). Sega presents these very same factual and legal issues at the core of its claims against Consovoy. *See Hill*, 282 F.3d at 347 (claims cannot move forward in court that are "based on the same operative facts" and "inherently inseparable from the claims" compelled to arbitration). Accordingly, Sega's claims against Consovoy map onto issues that the California courts have compelled Sega to arbitrate with Consovoy's clients. That overlap is what the district court failed to consider and is what requires a stay of this litigation pending the arbitrations.

A close look at each of Sega's claims against Consovoy confirms they are derivative of Sega's counterclaims against Consovoy's clients in arbitration. Count I against Consovoy is a claim of tortious interference with the EULA itself. Sega's theory is that "Consovoy intentionally induced Claimants that agreed to the EULA to breach it by making the decision to file … a single, consolidated petition." JA032, ¶77. That is the exact breach of contract theory that Sega is asserting against Consovoy's clients that has been compelled to arbitration. For those claims, Sega claims that Consovoy's clients "materially breached the arbitration agreement by … bringing a collective or consolidated petition to compel Sega to arbitrate." JA221, ¶50. Thus, Count I in this litigation and Sega's breach claim against Consovoy's clients both turn on the "same operative facts," are "inherently inseparable," and this

litigation would have a "'critical impact' on the arbitration[s]." *Waste Mgmt.*, 372 F.3d at 343.

Sega's other claims against Consovoy also "aris[e] out of" the EULA. Count II is a claim of tortious interference with a contract between Sega and JAMS. On that contract, Sega alleges its "inclusion of JAMS as the arbitration provider in the EULA" with Consovoy's clients is what "consummated" the "contract between Sega and JAMS to provide arbitration services." JA033, ¶82. By Sega's own theory, then, Sega's EULA with Consovoy's clients is the but for cause of Sega's supposed contract with JAMS that Consovoy allegedly induced JAMS to breach. And *Sega itself* repeatedly told the L.A. Superior Court that "Sega's [breach] case against JAMS arises out of the same transaction or series of related transactions as Petitioners' arbitration demands." JA275; *see also* JA275 (stating that "the arbitrations and Sega's case against JAMS" arise out of the same transaction or series of related transactions).[2]

Sega's EULA is also central to Sega's false advertising claims against Consovoy in Counts III and IV. For those claims, Sega asserts that Consovoy solicited potential claimants with advertisements that were unlawful because the ads

---

[2] Sega also told the L.A. Superior Court its fraud claims in that case (since ordered to arbitration) are based on Consovoy's clients "never [having] assented to its EULA"—an issue at "the core of what [Consovoy's clients] must prove in their arbitrations." JA320; *see also* JA306 ("[I]n the arbitrations … , Sega will seek to show that certain arbitration petitions were fraudulent[.]").

did not "truthfully represent[]" that a person with a claim against Sega "must have also agreed to the EULA." JA036, ¶98. And Sega alleges that "Consovoy knew that its conduct would cause consumers who had not agreed to the EULA to sign up for its services." JA036, ¶101; *see also* JA036-37, ¶¶104, 106 (same as to Count IV). These claims thus require the Court to determine whether Consovoy's clients agreed to Sega's EULA. Again, that issue is front and square in Sega's claims against Consovoy's clients—and thus will be resolved in arbitration. Counts III and IV thus turn on the "same operative facts," are "inherently inseparable," and this litigation would have a "'critical impact' on the arbitration[s]." *Waste Mgmt.*, 372 F.3d at 343.

In sum, Sega's claims here are derivative of the claims and issues the California courts already sent to arbitration. They involve the same operative facts and thus are inherently inseparable from the issues bound up in the pending arbitrations. Because Sega's claims center upon Consovoy's clients having agreed (or not agreed) to Sega's EULA and/or having breached the EULA, forcing Consovoy to litigate these claims here would have a "critical impact" on the pending arbitrations. *Waste Mgmt.*, 372 F.3d at 343 ("permitting suit to go forward" that would involve issues compelled to arbitration, thus raising estoppel issues and the risk of inconsistent determinations, "would undermine the arbitration proceeding and thus thwart federal policy" (*id.* at 342 n.4)). Further, "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the

existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Am. Bankers Ins. Grp.*, 453 F.3d at 627. The FAA does not allow this parallel litigation to move ahead of the arbitrations. Yet the district court failed to consider that "critical impact" of Sega's claims against Consovoy's clients on Sega's claims in this case. Accordingly, the district court erred in ruling that Consovoy was not entitled to a mandatory stay under Section 3 of the FAA.

## CONCLUSION

This Court should reverse the district court's denial of Consovoy's motion to stay pending resolution of its clients' underlying arbitration with Sega.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Bryan Weir*
Thomas R. McCarthy
Bryan Weir
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
bryan@consovoymccarthy.com

*Counsel for Consovoy McCarthy PLLC*

## STATEMENT REGARDING ORAL ARGUMENT

Because this case presents important questions about statutory rights, Consovoy respectfully requests oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 4,413 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word for Mac in 14-point Times New Roman font.

Dated: November 17, 2025                    */s/ Bryan Weir*

## CERTIFICATE OF SERVICE

I filed this brief with the Court via ECF, which will email everyone requiring notice.

Dated: November 17, 2025                    */s/ Bryan Weir*